UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO.   11-CR-801-1 |
| RICHARD ANGEL GONZALES | § § § | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant is charged with knowing possession of a firearm after conviction of a felony crime, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (D.E. 1 at 1). Defendant filed a Motion to Suppress Illegally Obtained Evidence, seeking to exclude evidence obtained as a result of the search of a locked briefcase. (D.E. 34). On January 4, 2012, this Court held a hearing on the Motion. Based on the findings of fact and conclusions of law stated on the record, and for the reasons stated below, the Court DENIES Defendant's Motion to Suppress.

### I.   STATEMENT OF FACTS

On November 1, 2010, Senior Officers Jason Lee and Luis Flores of the Corpus Christi Police Department were dispatched to the Paradise Bay Apartments to respond to a report of an assault involving a firearm. Officers Lee and Flores immediately contacted the reporting victim, Marivel Duran, a resident leasee of an apartment in the Paradise Bay complex. Duran told the Officers that she was assaulted and threatened with a firearm, identifying Defendant as the assailant. Duran indicated Defendant was likely in a nearby parking lot. Officers Lee and Flores located Defendant. Officer Flores remained in the parking lot with Defendant while Officer Lee returned to Duran's apartment.

During an interview with Officer Lee, Duran reported that Defendant punched her, prompting Duran to retrieve a firearm to protect herself from Defendant. Duran stated Defendant then took the firearm from Duran and pointed it at her head, threatening her with it. To preserve evidence and for safety reasons, Officer Lee asked Duran for the location of the firearm. Duran told Officer Lee the firearm was in a briefcase belonging to Defendant, in the master bedroom of her apartment. Officer Lee received consent from Duran to enter the bedroom and Duran directed Officer Lee to the briefcase. Officer Lee asked Duran for permission to open the briefcase, which was locked with a combination lock. Duran consented, telling Officer Lee that she knew the combination and had access to the briefcase. Duran gave Officer Lee the combination to the locked briefcase, allowing Officer Lee to open it. Defendant was not asked for permission and did not give permission for the locked briefcase to be opened. Inside the briefcase, Officer Lee found a firearm.

Defendant testified at the suppression hearing that the briefcase containing the firearm belonged to him and Duran knew the combination to the briefcase because Defendant kept extra keys to Duran's apartment inside the briefcase. On one past occasion, Duran locked herself out of her apartment, needing the combination of the briefcase to retrieve a key. At that time, the briefcase was kept at Defendant's cousin's apartment. The briefcase contained Defendant's important documents and did not contain any items belonging to Duran.

Defendant also testified that he resided in at least three locations, including his cousin's apartment, Duran's apartment at Paradise Bay, and another girlfriend's apartment. Defendant stayed at Duran's apartment on-and-off for a month or two before November 1, 2010. Defendant shared the master bedroom with Duran while staying at her apartment, kept clothes there, and received mail at the apartment. Defendant stated that on November 1, 2010, he was present at

Duran's apartment in order to care for Duran's son, though he had not slept at her apartment the previous night.

After discovery of the firearm in Duran's apartment, Defendant was arrested and taken to the Nueces County Jail. Hours later, Defendant was interviewed by agents from the Bureau of Alcohol, Tobacco, and Firearms and Explosives. After waiving his Miranda rights, Defendant made a statement to the agents admitting possession of ammunition and detailing its location in Duran's apartment. This information lead to a subsequent search of Duran's apartment and recovery of the ammunition.

Defendant's Motion to Suppress seeks to exclude the firearm and suppress statements made and ammunition found as fruit of the poisonous tree stemming from the search that produced the firearm. (D.E. 34).

## III. ANALYSIS

### A. Defendant has a Fourth Amendment Interest in the Briefcase.

" 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted' " by a third party. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). Though a property interest in that which is searched or seized is one factor to be considered, the applicability of Fourth Amendment rights do not hinge on " 'arcane' concepts of property law." *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980) (quoting *Rakas*, 439 U.S. at 149–50 n.17). Rather, "standing" turns on whether the person asserting their Fourth Amendment rights had a legitimate expectation of privacy in that which was searched or seized. *See Rawlings*, 448 U.S. at 106; *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996). The Fifth Circuit has suggested the following factors to consider in this inquiry:

3

> "[W]hether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises."

*United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981).

Defendant had a legitimate expectation of privacy in the locked briefcase, so as to establish a Fourth Amendment interest in the contested search. Defendant testified that he owned the briefcase, a present from his uncle. As the owner and only person who kept items in the briefcase, Defendant had the right to exclude others. In fact, Defendant took action beyond normal precautions to exclude others and maintain his privacy by keeping the briefcase at his girlfriend's apartment and by using a combination lock to keep the briefcase secured. Further, Defendant exhibited a subjective expectation that his briefcase would remain free from governmental invasion, as he only gave the combination to the briefcase only to his girlfriend, Duran, but did not give the combination to family members such as his cousin.

The fact that Defendant was not on the premises at the time of the search does not destroy Defendant's privacy interest in the briefcase. *See United States v. Briones-Garza*, 680 F.2d 417, 421 (5th Cir. 1982). "The nature of the premises and the circumstances of the case instead reveal the extent of a person's expectations." *Id*. Residence is an important consideration in this case-specific inquiry. *Id*. In this case, Defendant was a resident in Duran's apartment on a frequent basis. Although this was not the only place he stayed, Defendant had a personal relationship with Duran, spent the night at Duran's apartment on a semi-regular basis, had permission from Duran to be in the apartment, took care of Duran's son, possessed keys to the apartment, and kept clothes there as well. *See, e.g.*, *Briones-Garcia*, 680 F.2d at 421–23; *Haydel*, 649 F.2d at 1154–55. These facts are

sufficient to establish a sufficient expectation of privacy. *See Briones-Garcia*, 680 F.2d at 421–22.

Finally, it is well-established that the fact of third-party ownership or leasee-status of the apartment in which Defendant's locked briefcase was found is not dispositive to the issue of standing. *See Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (" 'To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share.' ") (quoting *Minnesota v. Olson*, 495 U.S. 91, 98–99 (1990)).

### B. The Search of the Locked Briefcase was Consensual.

The Fourth Amendment protects against unreasonable search and seizure, requiring a warrant or probable cause. U.S. Const. amend. IV. Under an exception to this rule, a search is permissible without a warrant or probable cause when done with valid consent by a person with authority to consent. *See Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973); *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Valid consent is consent that is voluntarily given. *See Schneckloth*, 412 U.S. at 223. Voluntariness is a question of fact based on the totality of the circumstances and is not at issue in this case. *Id.*; *see also United States v. Drayton*, 536 U.S. 194 (2002). Instead, the parties dispute whether Duran had the authority to consent to Officer Lee's search of Defendant's briefcase. Authority to consent to such a search may be actual or apparent. *See Jaras*, 86 F.3d at 389.

#### 1. Actual Authority

Actual authority does not necessarily rest with one person alone, but may instead be "obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). "[T]he consent of one who possesses common authority over premises or effects is valid

as against the absent, non-consenting person with whom that authority is shared." *Id*. at 170. In turn, common authority rests heavily on "widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Randolph*, 547 U.S. at 111; *see also Matlock*, 415 U.S. at 169 –71, 172 n.7 (cohabiting couple); *but see Chapman v. United States*, 365 U.S. 610, 616–617 (landlord-tenant relationship).

In making this inquiry, the Fifth Circuit has analyzed joint control and assumption of risk, directing courts to look to whether the person authorizing the search " 'has the right to permit the inspection in [their] own right' " and whether the non-consenting person "assumed the risk" that the consenting person would permit the area to be searched. *United States v. Shelton*, 337 F.3d 529, 535 (5th Cir. 2003) (quoting *Matlock*, 415 U.S. at 171 & n.7); *see Jaras*, 86 F.3d at 389; *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991); *United States v. Rizk*, 842 F.2d 111, 112–13 (5th Cir. 1988).

The Supreme Court has used *Frazier v. Cupp*, 394 U.S. 731, 740 (1969), as an illustration of consent to search based on common authority:

> In *Frazier v. Cupp*, the Court "dismissed rather quickly" the contention that the consent of the petitioner's cousin to the search of a duffel bag, which was being used jointly by both men and had been left in the cousin's home, would not justify the seizure of petitioner's clothing found inside; joint use of the bag rendered the cousin's authority to consent to its search clear. Indeed, the Court was unwilling to engage in the "metaphysical subtleties" raised by Frazier's claim that his cousin only had permission to use one compartment within the bag. By allowing the cousin the use of the bag, and by leaving it in his house, Frazier was held to have assumed the risk that his cousin would allow someone else to look inside.

*Matlock*, 415 U.S. at 170-171 (citations omitted).

In the case at hand, Duran had the actual authority to consent to the search of Defendant's briefcase. Defendant was a sometimes guest in Duran's apartment, residing there for a temporary

period of time. His privacy was not long-lasting, and was completely at the sufferance of Duran, who rented the apartment. Duran had access to every area in the apartment, including the room in which the briefcase was stored. Duran also had the combination to the briefcase, giving her the ability to open the briefcase and indicating she had permission to do so. There is no evidence that there was any obstacle to her accessing the briefcase while it was kept in her apartment and she had the combination. Further, there is no evidence that Defendant attempted to change the combination on the lock, move the briefcase out of Duran's apartment, or otherwise make the briefcase inaccessible to her after she received the combination. In fact, Defendant seemed to have abandoned the briefcase at Duran's apartment by ending his relationship with Duran and moving out of the apartment without it. Defendant testified at his suppression hearing that he withdrew permission for Duran to access his briefcase after giving her the combination by telling Duran that she could not open his briefcase again. The Court chooses not to believe this self-serving statement.

From these facts, it is clear that Defendant relinquished his expectation of privacy in the briefcase as to Duran, and could have reasonably anticipated such joint access to the briefcase to lead to exposure of the contents of the briefcase to others, including law enforcement.

### 2. Apparent Authority

Apparent authority, as a substitute for actual authority to consent, is based in the Fourth Amendment demand for "reasonableness" of police action. *Illinois v. Rodriguez*, 497 U.S. 177, 184–185 (1990). When taking such Fourth Amendment action, the government is not always required to be factually accurate if the action taken is "objectively understandable and reasonable." *Id.* at 185. Therefore, the appearance of authority will justify reliance on consent when it is "judged against an objective standard: would the facts available to the officer at the moment ... warrant a man

of reasonable caution in the belief that the consenting party had authority over the premises? . . . [I]f so, the search is valid." *Id.* at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)) (internal quotations omitted); *see also United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997) (overruled on other grounds).

  Here, Duran also had apparent authority to give valid consent to a search of the briefcase. Duran was the primary renter and resident of the apartment in which the briefcase was found. She had access to the entire apartment and knew the exact location of the briefcase, as well as what the briefcase contained. Most importantly, Duran knew the combination to the lock on the briefcase and stated to Officer Lee that she had access to the briefcase. Though Duran told Officer Lee that the briefcase belonged to Defendant, she also made Officer Lee aware of the personal relationship she had with Defendant. There were no circumstances or facts available to Officer Lee at the time of the search to contradict Duran's statements and apparent accessibility to the contents of the briefcase. These considerations support the finding that Officer Lee, after asking permission of Duran to search the briefcase and after being given the combination to the briefcase's lock, acted as a prudent officer in proceeding to search the briefcase upon the belief that Duran had authority to consent to a search. It was reasonable for Officer Lee to believe he obtained valid consent, under these circumstances, when the resident of an apartment in which a locked briefcase was stored, who knew the combination to the briefcase, and who stated she had access to the briefcase, consented to its search.

  *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996), does not alter this analysis. In *Jaras*, a driver consented to the search of his vehicle, but stated the suitcases therein belonged to the passenger present in his vehicle. *Id.* at 386, 389. The Fifth Circuit found that there was no apparent

authority for the driver to consent to a search of the suitcases because the officer "did not mistakenly rely on information that, if true, would have justified a belief that Salazar had actual authority to consent to a search of the luggage putatively belonging to" the passenger. *Id*. at 389; *but see United States v. Richard*, 994, F.2d 244, 250 (5th Cir. 1993) ("Unless the complaining co-tenant has somehow limited the other's access to a piece of property, the consenting co-tenant's authority extends to all items on the premises. For example, in *Rizk*, the owner of a briefcase asked Rizk to carry it, but locked it and did not give Rizk the combination. The owner could consent to a search of briefcase, but Rizk could not."). The facts of the present case do not reflect a circumstance such as that in *Jaras*. Duran made Officer Lee aware that the briefcase in her apartment belonged to Defendant. However, Officer Lee was then given explicit information, and information supporting, that Duran had direct and unfettered access to Defendant's briefcase. If true, this information justified Officer Lee's belief that Duran had actual authority to consent to the search of Defendant's briefcase.

## IV.  CONCLUSION

First, the Court concludes that Defendant had a Fourth Amendment interest in the briefcase found in Duran's apartment, allowing him to challenge its search. Second, the Court concludes that the consensual search of Defendant's briefcase was proper due to Duran's actual and apparent authority to give consent. Therefore, the dictates of the Fourth Amendment were not violated and the firearm and other resulting evidence collected shall not be suppressed as fruit of the poisonous tree.

The Court hereby DENIES Defendant's Motion to Suppress. (D.E. 34).

SIGNED this 12th day of January, 2012.

_____
HAYDEN HEAD
SENIOR UNITED STATES DISTRICT JUDGE